**CASE NO. 23-4013**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

―――――――――

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

ANDRE RICARDO BRISCOE,

*Defendant - Appellant.*

―――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
AT BALTIMORE

―――――――――

**OPENING BRIEF OF APPELLANT**

―――――――――

Marc G. Hall
LAW OFFICES OF MARC G. HALL, P.C.
7474 Greenway Center Drive
Suite 150
Greenbelt, Maryland 20770
(240) 205-3041
mghlaw@mac.com

*Counsel for Appellant*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUES ...................................................................2

STATEMENT OF THE CASE................................................................2

STATEMENT OF THE FACTS .............................................................3

SUMMARY OF THE ARGUMENT ......................................................5

ARGUMENT ....................................................................................5

I.     WHETHER THE GOVERNMENT FAILED TO CHARGE THE APPELLANT WITHIN THE REQUIRED STATUTE OF LIMITATIONS?........................................................................5

     A.     Standard Of Review .......................................................5

     B.     Argument......................................................................6

     1.     The Information was improperly filed in this case .........6

     2.     The purpose of the Statute of Limitations......................7

          a.     Five years from the date of the charged conspiracy had passed and the charges should have been dismissed....................9

          b.     Mr. Briscoe was prejudiced by the government's delay...........10

II.     WHETHER THE USE OF A CELL SITE SIMULATOR VIOLATED THE FOURTH AMENDMENT? ......................................11

     A.     Standard Of Review .......................................................11

i

B.      Argument......................................................................11

    1.   Mr. Briscoe Had Standing.........................................14

    2.   The Use of a Cell Site Simulator was Unconstitutional ..........15

    3.   The warrant obtained after the initial entry was invalid because it did not inform the District Court Judge that a cell site simulator was used .........................................16

III.   DID THE GOVERNMENT COMMIT A BRADY VIOLATION BY FAILING TO SECURE THE VIDEO FROM THE COMCAST SECURITY CAMERA IN THE VICTIM'S APARTMENT?......................................................................18

   A.   Standard Of Review .....................................................18

   B.   Argument......................................................................18

IV.   WHETHER THE GOVERNMENT KNOWINGLY USED PERJURED TESTIMONY TO OBTAIN THE INDICTMENT AND CONVICTION?..............................................................22

V.   WHETHER THE DISTRICT COURT ERRED IN NOT GRANTING THE APPELLANT'S RULE 29 MOTION FOR JUDGEMENT OF ACQUITTAL? ....................................26

   A.   Standard of Review ......................................................26

   B.   Argument......................................................................26

    1.   Evidence as to the Drug related counts.....................27

    2.   Evidence as to the Murder convictions.....................28

CONCLUSION..........................................................................29

REQUEST FOR ORAL ARGUMENT .................................................29

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Youngblood*,
488 U.S. 51 (1988) ................................................................ 19, 20

*Brady v. Maryland*,
373 U.S. 83 (1963) ................................................................ 18-19

*Brigham City v. Stuart*,
547 U.S. 398 (2006) .................................................................. 16

*Burks v. United States*,
437 U.S. 1 (1978) ...................................................................... 26

*California v. Trombetta*,
467 U.S. 479 (1984) .................................................................. 19

*Carpenter v. United States*,
138 S. Ct. 2206 (2018) .......................................................... 15, 17

*Chavis v. North Carolina*,
637 F.2d 213 (4th Cir. 1980) ..................................................... 19

*Giglio v. United States*,
405 U.S. 150 (1972) .................................................................. 19

*Groh v. Ramirez*,
540 U.S. 551 (2004) .................................................................. 16

*Howell v. Barker*,
904 F.2d 889 (4th Cir. 1990) ....................................................... 5

*Iannelli v. United States*,
420 U.S. 770, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975) ................... 27

*Jackson v. Virginia*,
443 U.S. 307 (1979) .................................................................. 26

*Minnesota v. Olson*,
495 U.S. 91 (1990) .................................................................... 14

*Napue v. Illinois*,
   360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) .................................... 22

*Order of R. Telegraphers v. Railway Express Agency, Inc.*,
   321 U.S. 342 (1944) ........................................................................................... 8

*Pendergast v. United States*,
   397 U.S. 112, 317 U.S. 412 (1943) ................................................................... 8

*Rakas v. Illinois*,
   439 U.S. 128 (1978) ......................................................................................... 14

*Riley v. California*,
   134 S. Ct. 2473 (2014) ..................................................................................... 17

*Toussie v. United States*,
   397 U.S. 112 (1970) ............................................................................... 7, 8, 10

*United States v. Agurs*,
   427 U.S. 97 (1976) ........................................................................................... 19

*United States v. Ath*,
   951 F.3d 179 (4th Cir. 2020) ........................................................................... 26

*United States v. Bagley*,
   473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) .................................. 22

*United States v. Bohl*,
   25 F.3d 904 (10th Cir. 1994) ........................................................................... 20

*United States v. Burgos*,
   94 F.3d 849 (4th Cir. 1996) ............................................................................. 27

*United States v. Caldwell*,
   7 F.4th 191 (4th Cir. 2021) .............................................................................. 26

*United States v. Crockett*,
   435 F.3d 1305 (10th Cir. 2006) ....................................................................... 22

*United States v. Dennis*,
   19 F.4th 656 (4th Cir. 2021) ............................................................................ 26

*United States v. Edmonds*,
   679 F.3d 169 (4th Cir. 2012) ........................................................................... 27

*United States v. Hackley*,
   662 F.3d 671 (4th Cir. 2011) ................................................................. 27

*United States v. Hickman*,
   626 F.3d 756 (4th Cir. 2010) ................................................................. 27

*United States v. Jobson*,
   102 F.3d 214 (6th Cir. 1996) ................................................................. 18

*United States v. Marion*,
   404 U.S. 307 (1971) .............................................................. 7-8, 10

*United States v. Mark*,
   943 F.2d 444 (4th Cir. 1991) ................................................................. 11

*United States v. Polizzi*,
   801 F.2d 1543 (9th Cir. 1986) ................................................... 22, 24

*United States v. Powell*,
   693 F.3d 398 (3d Cir. 2012) ................................................................. 29

*United States v. Reza-Ramos*,
   816 F.3d 1110 (9th Cir. 2016) ............................................................... 29

*United States v. Shabani*,
   513 U.S. 10, 115 S. Ct. 382, 130 L. Ed. 2d 225 (1994) ...................... 27

*United States v. Small*,
   944 F.3d 490 (4th Cir. 2019) *cert. denied*, 140 S. Ct. 490 (2020) ................. 26

*United States v. Tafollo-Cardenas*,
   897 F.2d 976 (9th Cir. 1990) ................................................................. 11

*United States v. Tresvant*,
   677 F.2d 1018 (4th Cir. 1982) ............................................................... 26

*United States v. Valenzuela-Bernal*,
   458 U.S. 858 (1982) ............................................................................ 19

*United States v. Yearwood*,
   518 F.3d 220 (4th Cir. 2008) ................................................................. 27

*Wong Sun v. United States*,
   371 U.S. 471 (1963) ............................................................................ 16

## Statutes

18 U.S.C. § 922 ................................................................. 2

18 U.S.C. § 924 ......................................................... 2, 3, 28

18 U.S.C. § 1111 .............................................................. 28

18 U.S.C. § 1512 ............................................................... 3

18 U.S.C. § 3231 ............................................................... 1

18 U.S.C. § 3282 .......................................................... 9, 10

21 U.S.C. § 841 ............................................................. 2, 6

21 U.S.C. § 846 ............................................................. 2, 6

28 U.S.C. § 1291 ............................................................... 1

## Other Authorities

Fed. R. Crim. P. 7 ....................................................... 6, 7, 9

Fed. R. Crim. P. 29 ............................................... 2, 5, 26, 29

Fed. R. Crim. P. 58 ........................................................... 6

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT
_____

### No(s). 23-4013
_____

### UNITED STATES OF AMERICA,

### Appellee,

### v.

### ANDRE BRISCOE

### Appellant.
_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (NORTHERN DIVISION)

## (THE HONORABLE RICHARD D. BENNETT
## UNITED STATES DISTRICT JUDGE)
_____

## BRIEF OF APPELLANT
_____

## <u>JURISDICTIONAL STATEMENT</u>

The district court had jurisdiction in this case under 18 U.S.C. § 3231 and entered final judgment as to Andre Briscoe on January 4, 2023. Joint Appendix [hereinafter JA] JA 2073. Briscoe filed his notice of appeal on January 5, 2023, within 14 days after entry of judgment in his case. JA 2080. This Court has jurisdiction under 28 U.S.C. § 1291.

1

## STATEMENT OF ISSUES

**I. WHETHER THE GOVERNMENT FAILED TO CHARGE THE APPELLANT WITHIN THE REQUIRED STATUTE OF LIMITATIONS?**

**II. WHETHER THE USE OF A CELL SITE SIMULATOR VIOLATED THE FOURTH AMENDMENT?**

**III. DID THE GOVERNMENT COMMIT A BRADY VIOLATION BY FAILING TO SECURE THE VIDEO FROM THE COMCAST SECURITY CAMERA IN THE VICTIM'S APARTMENT?**

**IV. WHETHER THE GOVERNMENT KNOWINGLY USED PERJURED TESTIMONY TO OBTAIN THE INDICTMENT AND CONVICTION?**

**V. WHETHER THE DISTRICT COURT ERRED IN NOT GRANTING THE APPELLANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL?**

## STATEMENT OF THE CASE

On June 8, 2022, after a jury trial, Mr. Andre Briscoe was convicted of the following offenses: Count One, Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 846; Count Two, Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841; Count Three, Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1); Count Four, Use of a Firearm in Relation to a Drug Trafficking Crime and Crime of Violence Causing the Death of Another in violation of 18 U.S.C. § 924 (c) and (J)(1); Count Five, Use of a Firearm in Relation to a Drug Trafficking Crime and Crime of Violence Causing the Death of

Another in violation of 18 U.S.C. § 924 (c) and (J)(1) and Count Six, Killing a Witness to Prevent Communication to Law Enforcement in violation of 18 U.S.C. § 1512 (a)(1)(C) and (a)(3)(A). JA 2069.

On January 4, 2023 a sentence of life was given to the appellant Briscoe as to Counts Four, Five and Six. As to Counts One and Two, Mr. Andre Briscoe received a 480-month sentence, and as to Count Three, Mr. Briscoe received a 120-month sentence. All sentences were to run concurrently with each other. JA 2073. Mr. Briscoe now appeals his convictions in this matter.

## STATEMENT OF THE FACTS

The appellant, Andre Briscoe, was initially charged in this case on May 26, 2020. JA 124.  The facts stem from the 2015 murder of Jennifer Jeffrey and her 7-year-old son, K.B. Viewed in the light most favorable to the government, the evidence at trial showed that Jennifer Jeffrey was a drug dealer in Baltimore. JA 1650.  Ms. Jeffrey had a large cache of drugs in her possession which was known to Ms. Haynes and the appellant. JA 1609-1610, 1618. This fact was known to the appellant and he, along with his girlfriend, Kiara Haynes, planned to steal the drugs from her. JA 1606. Ms. Haynes supplied the appellant with a firearm to be used in this crime which she obtained from her nephews. JA 1606-1607. On May 27, 2015 the appellant allegedly went to her house where both Ms. Jeffrey and her son K.B. were murdered and the cache of drugs stolen. JA1623.

3

Ms. Haynes and Mr. Briscoe both came from a large family who mostly lived in the area of Cambridge, Maryland. JA 1035-1036. Ms. Haynes was at one time a good friend of Ms. Jeffrey and had introduced Mr. Briscoe to Ms. Jeffrey. JA 1604. She was also involved along with other members of her family in using and distributing controlled substances. JA 1053, JA 1076, JA 1234-1235.

The government presented a recorded jail call that occurred the night before the murder. JA 1610-1611. This call was between the appellant, Briscoe, Kiara Haynes, and Haynes nephew, who was incarcerated at the time. In the call she tells her cousin that she needs a gun and arrangements are made for her to get one through his connections. JA 1612.

Following the murders, Mr. Briscoe called various family members in order to get a ride back to Cambridge with the drugs which he distributed. JA 1255. The government called a number of people who knew Mr. Briscoe and to whom he made incriminating statements about the murders and the circumstances surrounding the murders. They included Tiffany Jackson who saw the defendant right after the murders, Kiara Haynes who agreed to testify against him, her uncle Alfred Harris III and a cousin, Wane Briscoe. JA 1372, JA 1603, JA 1034, JA 1228. During conversations with these individuals, the appellant admitted that he had committed the murders, would recount dreams he had about Jennifer and her son and that he did this to steal her drugs. JA 1084, JA 1258.

4

## SUMMARY OF THE ARGUMENT

First, the district court erred by not dismissing the indictment which came after the statute of limitations had passed. The court erred by not suppressing a search based upon cell site data obtained in violation of the Fourth Amendment. The court failed to hold the government accountable for their Brady violation when they did not attempt to preserve security camera recordings that may have been available. The court erred when it did not dismiss the indictment and conviction based on perjured testimony used in the Grand Jury and before the petit jury. Finally, the court should have granted the Rule 29 motion.

## ARGUMENT

### I.  WHETHER THE GOVERNMENT FAILED TO CHARGE THE APPELLANT WITHIN THE REQUIRED STATUTE OF LIMITATIONS?

#### A.    Standard Of Review

Whether pre-indictment delay violates the due process clause is determined by this Court on a case-by-case basis. *Howell v. Barker*, 904 F2d. 889, 895 (4th Cir. 1990). Pre-indictment delay will only constitute reversable error when the delay violates "fundamental conceptions of justice" and where the defendant has suffered actual prejudice.

**B.    Argument**

On May 20, 2020, Mr. Briscoe was arrested on a criminal complaint that alleges a conspiracy to distribute controlled dangerous substances beginning April 20, 2015 in violation of 21 U.S.C. § 846 and on May 27, 2015, in violation of 21 U.S.C. § 841.

On May 26, 2020, following a preliminary hearing, an information was filed alleging the drug related charges only. J A 6 . On June 8, 2020, Mr. Briscoe filed a Motion to Strike the Information from the record, alleging the government has failed to charge Mr. Briscoe properly when they filed an information rather than an indictment in a case where the appellant had not waived indictment. JA 30.

It was not until July 1, 2020 that an indictment was returned by the Grand Jury. JA 7. That indictment alleged not only the narcotics related charges in the original criminal complaint but also the murder charges concerning Ms. Jeffreys and her son.

**1.    The Information was improperly filed in this case.**

Under Federal Rule of Criminal Procedure 7 an Information is properly filed in only two instances:

1. A misdemeanor, an offense punishable by imprisonment for one year or less may be prosecuted in accordance with Rule 58(b)(1).

2. Or an offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant – in open court and after being advised of the nature of the charge and of the defendant's rights – waives prosecution by indictment.

The complaint alleged offenses that are punishable by imprisonment for more than one year. As such, Rule 7(a)(2) is not applicable. Mr. Briscoe did not waive indictment. Therefore, the information could not legally be filed, pursuant to the rules, on May 26, 2020, just one day prior to when the statute of limitations would bar prosecution. Mr. Briscoe was being held on a complaint, not the information. The charges instituted, therefore, arose from the complaint. Furthermore, the purpose of an information is not to serve as a placeholder until the government is ready to indict.

## 2. <u>The purpose of the Statute of Limitations:</u>

The statute of limitations is designed to protect individuals from having to defend themselves against charges when basic facts and defenses may have become obscured by the passage of time and to minimize danger of official punishment because of acts in the far distant past. *Toussie v. United States*, 397 U.S. 112, 114-115 (1970). Criminal statutes of limitation are to be liberally interpreted in favor of repose. *Toussie*, 397 U.S. at 115; *See also United States v.*

*Marion*, 404 U.S. 307, 322 (1971). These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced. *Id*. The Supreme Court described the statute of limitations as follows:

> [I]n their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber . . . [t]he theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-349 (1944).

Moreover, the Supreme Court has recognized that a bar on prosecution outside the statute of limitations may appear to be an injustice, but Congress has set statutes of limitation that must be followed. Thus, in *Toussie v United States*, *supra,* at 123-124, the Supreme Court stated:

> There is no doubt that the jury found that Toussie willfully failed to register and thereby subject himself to the same possibility of military service that faces other young men who fully comply with their legal obligations. There is some cause to feel that dismissal of the indictment in such a case is an injustice in a society based on full and equal application of the laws. But while Congress has said that failure to register is a crime, it has also made prosecution subject to the statute of limitations. "Every statute of limitations, of course, may permit a rogue to escape," *Pendergast v. United States,* 397 U.S. 112, 124, 317 U.S. 412, 418 (1943), but when a court

concludes that the statute does bar a given prosecution, it must give effect to the clear expression of congressional will that in such a case "no person shall be prosecuted, tried, or punished."

The government had failed to file an indictment within the five-year statute of limitations and thus, the charges should have been dismissed.

### a. Five years from the date of the charged conspiracy had passed and the charges should have been dismissed

As previously stated, Mr. Briscoe was charged by way of a complaint that alleged that beginning no later than April 2015 and continuing through on or about May 27, 2015 he was involved in a drug conspiracy and that on May 27, 2015 he conspired to distribute or possess with the intent to distribute 100 grams or more of heroin. The statute of limitations is governed by 18 U.S.C. §3282(a). The government may not prosecute, try, or punish Mr. Briscoe for conduct unless the indictment is returned within five years of this conspiracy.

The essential purpose of the statute of limitations is to give the defendant notice within a specific time frame of the charges against him. Notice to Mr. Briscoe of the existence of an information was on June 6, 2020. The counts in the information expanded the dates of the alleged conspiracy and added a completely new charge in Count Three. Thus, even if the charges in the information had been properly filed pursuant to Rule 7 and Mr. Briscoe had waived indictment, notice was not given to the defendant within the statute of limitations.

### b.  <u>Mr. Briscoe was prejudiced by the government's delay.</u>

The statute of limitations had run on the counts filed against Mr. Briscoe and there is a "irrebuttable presumption" that his right to a fair trial was now prejudiced. *Marion*, 404 U.S. at 322. The government in this case had allowed the evidence to become stale, memories to fade, and potential witnesses to disappear. It was the legislative intent of the drafters of 18 U.S.C. § 3282 that defendants who have lost their means of defense due to the passage of time should not be tried. *See Id*. It was recognized by the Supreme Court in *Toussie* that, "such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie*, 397 U.S. at 114-115.

The trial court ruled that, "In this case, Defendant has failed to show either "actual prejudice" or that the government intentionally delayed gaining a tactical advantage." The Court goes on to find that "the delay in this matter is attributable to the COVID-19 pandemic, not to any deliberate tactical maneuvering."

The appellant begs to differ. The trial court in the case ignores the five-year delay from May 27, 2015 until May 26, 2020. Instead, the Court places the blame for the delay on the COVID-19 outbreak. JA 45. However, that delay could only cover the period from March 2020 until the date charges were instituted in this

case by way of indictment on July 1, 2020. The trial court does not address the almost 5-year delay between May 27, 2015 and the indictment.

As to tactical advantage, it is clear the government found itself in a quandary when it realized the Statute of Limitations was running out. Filing the Information in this case exactly one day prior to the expiration of the Statute of Limitations does not save the case. What the filing of the Information did was to ensure that the appellant remained in custody until a Grand Jury could be obtained. Only the return of a Grand Jury Indictment prior to the May 27, 2020 date would prevent what should have been the dismissal in this case.

## II.     WHETHER THE USE OF A CELL SITE SIMULATOR VIOLATED THE FOURTH AMENDMENT?

### A.     Standard Of Review

This Court reviews the district court's rulings on the admissibility of evidence for abuse of discretion. *United States v. Mark*, 943 F.2d. 444, 447 (4th Cir. 1991); *United States v. Tafollo-Cardenas*, 897 F.2d. 976, 980 (9th Cir. 1990)

### B.     Argument

There were a number of searches in this case. Of concern to the appellant are the circumstances of the June 15, 2015 search that resulted in his first detention in this matter. JA 53-54. In an effort to locate individuals who had contact with the victim in this case shortly before her death, the police had searched her phone and

11

discovered the appellant's phone number. Baltimore City Police than used that to obtain a tracking warrant for the phone. That led them to locate the appellant's phone in the area of Cambridge, Maryland, specifically 502 Greenwood Avenue, Apartment 101. What was not disclosed to the magistrate that authorized the tracking warrant, was that the location of the appellant's phone and therefore the appellant was achieved using a "stingray" device. A stingray mimics a cell tower, enabling the police to locate any "pings" coming from a person's phone. Warrants were then obtained and executed on June 5, 2015 by a combination of Baltimore City detectives and Cambridge police officers at 502 Greenwood Avenue, Apartment 101, Cambridge, MD and 502 Greenwood Avenue, Apartment 202, Cambridge, MD. These warrants were signed by a judge of the Maryland District Court for Dorchester County.

In the affidavit in support of the search and seizure warrants for apartments in question, Detective Lewis stated that with assistance of the "Advanced Technical Team," further investigation revealed the cell phone belonging to Mr. Briscoe was located at 502 Greenwood Avenue, apartment 101. The various pleadings and testimony at the motions hearing made it clear that the "Advanced Technical Team" was really the use of a "stingray" device designed to track the location of the appellant's cellphone. The officers first executed the search warrant at apartment 101. JA 330-331. When there was no answer to their knock, they entered the

residence with a key and contacted the residents. The residents were then detained while the police continued to look for Mr. Briscoe and his cell phone. JA 382.

Using the stingray device again, the police believed the phone was in either apartment 201 or 202. JA 264. Without a warrant, the officers knocked on the door of apartment 202. JA 390. When the door was answered the appellant was lying on the couch in the apartment along with another male. JA 391. Moments later police saw someone run to the back of the apartment and the officers drew their guns and entered. All the residents in the apartment were then handcuffed, including the appellant. JA 391. The appellant was searched, and a cellphone was seized from under where he had been lying down. Only after this initial entry and the detention of everyone in the apartment, including the appellant, was a search warrant obtained for apartment 202. JA 265-266. When the police returned with the warrant, Mr. Briscoe's cell phone was seized, and Mr. Briscoe was taken to the Cambridge police department where he provided a videotaped statement and a DNA sample as well. JA 278, JA 282.

The appellant asserted in his Motion to Suppress that any and all evidence seized as a result of these warrants, and the fruits thereof, were obtained as the result of illegal searches and seizures in violation of his 4th and 5th amendment rights. The appellant also asserted that he had standing as an overnight guest at apartment 202. The Court denied the motion to suppress, finding after a motions

hearing that the appellant did not have standing.  The court therefore did not reach the issue as to whether the use of a cell site simulator was unconstitutional.

### 1.    Mr. Briscoe Had Standing:

To challenge a search an appellant must have had a reasonable expectation of privacy in the place that was searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

At the motions hearing, the issue of whether the appellant was an overnight guest was raised. Overnight guests have been held to have a legitimate expectation of privacy in the home where they are staying and are entitled to Fourth Amendment protection against police intrusion on that interest. *Minnesota v. Olson*, 495 U.S. 91 (1990). But more importantly, Mr. Briscoe always had standing and a legitimate expectation of privacy as to his person as well as the phone which he carried.

In denying that the appellant had standing, the court erroneously focused on the issue that he was not a true overnight guest in the apartment, ignoring the fact that the appellant's argument was that the standing issue did not relate to the apartment search but related to the search and seizure of the appellant's person and possessions. Therefore, appellant always had standing to object to his seizure, his arrest, and the seizure of his phone, as well as anything that flowed from his arrest such as his statement.

### 2.    The Use of a Cell Site Simulator was Unconstitutional

Investigators used a cell phone location tracking device, referred to above as a "stingray" device, without obtaining a warrant. A stingray is cell site simulator technology that can triangulate the source of a cellular signal without going through the wireless carrier to obtain the information historically. Instead, the technology mimics a carrier's cell phone tower and measures the strength of the cellular signal from several locations. Essentially, it masquerades as a wireless carrier's base station and electronically forces a cell phone to communicate with it as if it were the carrier's base station. By using a cell site simulator, the government can locate and intercept communications from cell phones and other wireless devices when they emit a ping.

The Supreme Court has recognized that an individual's cell phone not only contains a wealth of information about their private life but also has the ability to, with some degree of precision, reveal the location of the phone and therefore the probable location of the suspect as well. Intrusion into this private sphere qualifies as a search under the Fourth Amendment, and requires a warrant supported by probable cause. *Carpenter v. United. States*, 138 S. Ct. 2206, 2214 (2018).

What the police did in this case was to locate the phone through the use of the stingray device, conduct a warrantless entry and search of the apartment, and then obtain a warrant. This is exactly the type of police misconduct, enter and

search, and then get a warrant, that the Fourth Amendment protects against. "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).

Furthermore, any evidence gained through the use of warrantless cell phone location tracking taints the procurement of the warrant for apartment 202. Evidence flowing from the use of the stingray device should have been suppressed as "fruits of the poisonous tree." *Wong Sun v. United States.*, 371 U.S. 471 (1963). Without the unconstitutional use of the warrantless cell phone tracking, the Baltimore Police Department would not have had any information regarding the whereabouts of the appellant. T h e  police were engaged in a "fishing expedition" with the stingray device, without a warrant, to see where Mr. Briscoe's phone may have been located and therefore the appellant's location.

Therefore, law enforcement's use of the cell site simulator in this case constituted a search of Mr. Briscoe's person, as well his phone, in violation of the Fourth Amendment and the court below should have suppressed it.

**3.    The warrant obtained after the initial entry was invalid because it did not inform the District Court Judge that a cell site simulator was used.**

The affidavit and application for a search warrant lacked any reference to or description of a cell site simulator. As argued in the trial court, no judge, however technologically savvy they may be, could understand from reading the search

warrant affidavit that the government was seeking authority to use a cell site simulator. In *Carpenter,* the Supreme Court has recognized that an individual maintains a legitimate expectation of privacy, for Fourth Amendment purposes, in the record of his physical movements as captured through cell-site location information. *See Carpenter,* 138 S. Ct. at 2217. The mere act of using the cell site simulator was a search of Mr. Briscoe's phone. The cell site simulator sends signals to Mr. Briscoe's phone and forced the phone to respond to the fake cell tower. With a cell site simulator, the person has no idea that the government is obtaining signals from their phone or that the signals are occurring as a direct result of government's actions.

In *Riley v. California*, 134 S. Ct. 2473 (2014), the Supreme Court unanimously enunciated that a phone is more similar to a house than a car and held that a search of a phone requires a warrant. It explained, "[i]ndeed, a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home: it also contains a broad array of private information never found in a home in any form." *Id*. at 2491. Therefore, *Riley* offers even more support for the fact that police use of the cell site simulator is a search of the phone that requires a warrant. *See id*. at 2495 ("Our answer to

the question of what the police must do before searching a cell phone is accordingly simple—get a warrant.").

Here, the searches of the apartment, Mr. Briscoe's person, and Mr. Briscoe's phone were in violation of the Fourth Amendment, as they were conducted without a warrant, and no exception to the warrant requirement applies. Therefore, the exclusionary rule should have been applied and all such evidence excluded from the appellant's criminal trial.

## III. DID THE GOVERNMENT COMMIT A BRADY VIOLATION BY FAILING TO SECURE THE VIDEO FROM THE COMCAST SECURITY CAMERA IN THE VICTIM'S APARTMENT?

### A. Standard Of Review

When the government failed to preserve exculpatory evidence, the standard of review of the district court's decision is de novo. *See United States v. Jobson,* 102 F.3d 214, 217 (6th Cir. 1996).

### B. Argument

The United States Attorney has an affirmative duty to disclose any potentially exculpatory information to the defense. The Supreme Court has held that "suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v.*

*Maryland*, 373 U.S. 83, 87 (1963) accord *United States v. Agurs*, 427 U.S. 97, 106-07 (1976). *See also Giglio v. United States*, 405 U.S. 150 (1972).

The government also has a duty to preserve all evidence subject to disclosure under any of the Federal Rules of Criminal Procedure or under *Brady, Giglio* or their progeny, see, e.g. *Chavis v. North Carolina*, 637 F.2d 213, 224 (4th Cir. 1980). The defendant's right to due process in this regard has also been interpreted to include "what might loosely be called the area of constitutionally guaranteed access to evidence." *California v. Trombetta*, 467 U.S. 479, 485, (1984) (*quoting United States v Valenzuela-Bernal*, 458 U.S. 858, 867, (1982))*.* In *Trombetta,* the Court held that the government violates a defendant's due process right when material exculpatory evidence is not preserved. *See Trombetta***,** 467 U.S. at 489.  For evidence to meet this standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id at 488-489.

A separate and distinct test is applied where the government's failure to preserve evidence may only be "potentially useful." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). In *Youngblood* the Court held that, "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said then that it could have been

subjected to tests, the results of which might have exonerated the defendant." *Id* at 57. For this failure to preserve potentially exculpatory evidence the defendant also must show "bad faith" on the part of the government. *Id at* 58. The remedy for this due process violation is dismissal of the indictment. *United States v. Bohl*, 25 F.3d. 904 (1994).

Despite a significant police presence once the murder was reported, not a single investigator appears to have looked at or attempted to see if the security camera in the victim's home had recorded the crime. JA 675. Tasha Ayetes was the crime scene technician who responded to the scene the day of the murder. It was her job, in conjunction with Detective Lewis, to collect and preserve evidence at the crime scene. She testified that the camera in the kitchen was seized but she did not believe it was working and no extensive examination was performed on it. Detective Lewis also testified that he observed the camera and determined it was not working. JA 711. However, there appears to have been no effort to contact Comcast for further examination of the camera and whether it was recording at the time of the shooting. Police were also aware from others who had been in the victim's house before that there was a security camera there. JA 881.

The police also made only a cursory effort to see if any outside security camera had shown Mr. Briscoe in the area at the time of the murders. Detective Lewis testified that he was familiar with the area, and he checked one exterior

cameras in the neighborhood that he was aware of. JA 810. He made no further examination of the neighborhood to determine if there were other security cameras in use. JA 814.

The police disregarded the camera as a potential source of evidence that could be useful in their investigation. With only a cursory examination of the kitchen camera, they assumed it was not working. Not one single crime scene photo was taken of the camera to show its location. Nor was there testimony as to what, if any, examination was done of the camera to see if anything had been recorded. There was no testimony as to whether it recorded internally or sent a signal to Comcast where a recording might still exist on their servers. Likewise, external cameras were ignored. Detective Lewis only checked one he remembered from the neighborhood. There was no testimony of any search for other cameras in the neighborhood that could have recorded anyone entering or leaving the area.

It is just this type of investigative failure that the law is designed to prevent. Unlike the situation in *Youngblood*, the evidence in this case was not just "potentially useful," but would have provided definitive proof as to whether the defendant did or did not commit the alleged crime.

The two-pronged test of *Trombetta* should govern this factual situation. At the trial the defendant's counsel clearly articulated that this evidence would have been definitive had it been preserved. It required no tests and only needed to be

21

viewed. Had the video shown that the defendant did not commit the murders the finder of fact would have had conclusive proof of the defendant's innocence and therefore the evidence would have proven exculpatory.

The second prong of *Trombetta* is that the defendant has to show that this was evidence not otherwise reasonably obtainable. Here there is no question that this exculpatory evidence was exclusively in the possession of the police once they seized the camera. The defendant would have no other opportunity, absent the preservation of this evidence by the police, to examine whether the cameras inside or the murder scene were exculpatory.

## IV. WHETHER THE GOVERNMENT KNOWINGLY USED PERJURED TESTIMONY TO OBTAIN THE INDICTMENT AND CONVICTION?

A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the outcome of the trial. *United States v. Polizzi,* 801 F.2d 1543 (9th Circuit 1986). *See United States v. Bagley,* 473 U.S. 667, 105 S. Ct. 3375, 3382, 87 L. Ed. 2d 481 (1985). Where the government knowingly relies on perjury in order to obtain a guilty verdict, reversal is required. *United States v. Crockett,* 435 F.3d 1305, 1317 (10th Cir. 2006). *See Napue v. Illinois,* 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).

The government's case rested primarily on the testimony of Kiara Haynes who testified before the Grand Jury as well as the petit jury at trial. The significance of Haynes' testimony as to Briscoe's guilt cannot be underestimated. There was little direct proof in the government's case in chief tying Mr. Briscoe to the death of the victims in this case. Haynes' testimony as to the existence of a conspiracy between her and the appellant to acquire a gun, rob the victim of her drugs and then murder the victim was the only direct evidence of the appellant's involvement.

Furthermore, the government was well aware that Ms. Haynes was not had not testified truthfully about this case. The government knew of her perjured statement. In Haynes's direct testimony, government's counsel impeached their own witness by bringing out the fact that Ms. Haynes had lied to the government on numerous occasions prior to her testimony at trial. JA 1628. She had lied to investigators prior to her having counsel and she lied after having an attorney by her side. The government was so untrusting of Ms. Haynes that they delayed even placing her before the Grand Jury. The government was well aware that Haynes was capable of committing perjury due to her admission in the government's direct testimony that she had previously lied about her involvement.

By Mr. Budlow:

Q.     Have you lied about Jen and K's murders?
A.     Yes.

23

> Q.    To who?
> A.    To FBI agents, the Baltimore City police, the Grand Jury,
> Federal prosecutors, family, friends. JA 1628.

Later, on cross examination defense counsel reviews her prior perjury in the

Grand Jury.

> By Ms. Whalen:
> Q. So Ms. Haynes, the oath you took was essentially the same as the
> oath you took before the Grand Jury in July, 2020 right?
> A. Yes.
> Q. And you told us yesterday that you lied before the Grand Jury,
> right?
> A. Yes. JA 1717.

It could not be more explicit that the government used the testimony of

someone who was not only capable of committing perjury but that the government

knew committed perjury in the Grand Jury. As stated in *Polizzi*, *supra,* a

conviction obtained by the knowing use of perjured testimony must be set aside if

there is any reasonable likelihood that the false testimony could have affected the

outcome of the trial. Here the primary witness, the only witness with direct

knowledge of the Appellant's alleged guilt, testified at trial but provided

significant testimony before leading to the Grand Jury indictment.

While the creditability issues involving Ms. Haynes have been outlined

above, other witnesses bear scrutiny at this point. In trial, Alfred Harris III testified

as to his long history of heroin use and his several overdoses, as well as his

extensive criminal record. While Mr. Harris testified as to a number of things such

24

as family history and his own knowledge of heroin, the primary purpose of his testimony was for the government to put before the jury this quote, "He said, Unc, I killed the bitch.  And I said, why did -- why did you kill the little boy?  He said, because he was there and he could identify me." While incriminating, if true, it must be weighed against Mr. Harris' own creditability problems. Mr. Harris was first interviewed by the police detectives regarding the murders on June 5, 2015 when he told police he knew nothing about the murders. It wasn't until later that he began to cooperate with the government. JA 1105. Ultimately, he signed an agreement to act as an informant and wear a body wire. He visited the appellant three times while the appellant was in jail and recorded his conversations with the appellant. It should be noted that Mr. Harris did this as a paid informant. JA 1105. Much like Haynes, Mr. Harris' credibility is questionable.

Another witness whose testimony was unreliable was Wane Briscoe. He is alleged to have given the appellant a ride back to Cambridge the day after the murders. And again, he testified that the appellant made incriminating statements to him. However, Wane Briscoe proved to be another unreliable witness. He was admittedly in the drug trade himself. But when interviewed by the police on January 5, 2020 Wane Briscoe lied to the police and claimed he had nothing to do with selling drugs. JA 1294.  More significantly, Wane Briscoe said he knew not about the murders. JA 1295. Only when taken before a Grand Jury and appointed counsel did Wane Briscoe say he

knew something about the murders, leaving open the question was he lying previously or was he lying now.

### V.    WHETHER THE DISTRICT COURT ERRED IN NOT GRANTING THE APPELLANT'S RULE 29 MOTION FOR JUDGEMENT OF ACQUITTAL?

#### A.    Standard of Review

The Fourth Circuit reviews de novo the denial of a Rule 29 motion. *See, e.g. United States v. Dennis,* 19 F.4th 656, 665-669 (4th Cir. 2021); *United States v. Caldwell*, 7 F.4th 191, 209 (4th Cir. 2021) and *United States v. Ath*, 951 F.3d 179, 185 (4th Cir. Cert 2019) denied, 140 S.Ct. 2790 (2020).

#### B.    Argument

In a sufficiency challenge, denial of a Rule 29 motion should be affirmed on appeal if, taking the evidence in a light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982); *Accord Jackson v. Virginia,* 443 U.S. 307, 319 (1979) and *United States v. Small*, 944 F.3d 490, 499 (4th Cir. 2019) cert. denied, 140 S. Ct.  490 (2020). Reversal for insufficient evidence is reserved for cases in which "the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978).

At the conclusion of the government's case, the defense made a motion for acquittal under Rule 29. While the defense made a number of arguments as to why

the government had failed to meet its burden at this point including the statute of limitations argument above, the trial court denied the motion.

**1.    Evidence as to the Drug related counts:**

The appellant is this case was charged with in count one, Conspiracy to Distribute Heroin and in count two Possession with Intent to Distribute Heroin. In order to prove conspiracy, the government was required to establish three elements beyond a reasonable doubt that (1) an agreement to distribute and possess heroin with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. *United States v. Hackley*, 662 F.3d 671 (4th Cir. 2011); *United States v. Yearwood*, 518 F.3d 220, 225 – 26 (4th Cir. 2008); *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). *See also*: *United States v. Hickman*, 626 F.3d 756 (4th Cir. 2010); *United States v. Edmonds* 679 F.3d 169 (4th Cir. 2012). The essence of conspiracy is the agreement. *United States v. Shabani*, 513 U.S. 10, 16, 115 S.Ct. 382, 130 L.Ed 2d 225 (1994) quoting *Ianelli v. United States*, 420 U.S. 770, 777, 95 S.Ct 1284, 43 L.Ed 2d. 616 (1975). The presence of a knowing and voluntary agreement distinguishes conspiracy from the completed crime and is therefore an essential element of the crime of conspiracy.

As to the conspiracy itself, the government had to prove that the co-conspirators conspired with a purpose, specifically in this case to distribute heroin. As articulated by trial counsel, both these counts should have failed due to the lack of evidence that the substance in question was heroin and therefore there could be no meeting of the minds as to the co-conspirators. No drugs were seized in this case and therefore there was no evidence that the substance in question was in fact heroin as charged. In fact, the testimony from Haynes and from C.J. Williams is that what they ultimately possessed and were selling was Percocet in a liquid form. Without proof that the substance in question was heroin, then both counts should have been dismissed as it would be a factual impossibility for the defendant to possess heroin with intent to distribute without proof that heroin was possessed.

**2.    Evidence as to the Murder convictions:**

As to the 18 U.S.C 924J counts, which is the use of a firearm resulting in death, the government must prove the following elements: one, that a firearm was used during or in relation to a drug trafficking offense or a crime of violence and two, that it resulted in death. In essence, this relates to both murder counts.

18 U.S.C. 1111 includes felony murder, and that can be committed by robbery resulting in death. That was the theory by which the government proceeded against the appellant in this case. However, robbery is not defined in the statute, and because it's not defined in the statute, recent case law suggests if you

use the generic term, as was done here, you are confined to federal definitions not state definitions. *United States v. Reza-Ramos*, 816 F.3rd 1110 (9th Cir. 2016).

Therefore, in defining robbery, we look to the Hobbs Act Robbery definition. Conviction under the Hobbs Act requires proof beyond a reasonable doubt that (1) the defendant knowingly or willfully committed, or attempted or conspired to commit, robbery or extortion, and (2) the defendant's conduct affected interstate commerce. *See United States v. Powell*, 693 F. 3d 398 (3d Cir. 2012).

Here, the Government did not prove the element that the robbery and murder in this case effected interstate commerce. Therefore, the Court should have granted the motion under Rule 29.

## <u>CONCLUSION</u>

For the foregoing reasons, the appellant, Andre Briscoe, requests that this Court vacate his conviction and sentence and remand this case to the district court for further proceedings.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Andre Briscoe requests oral argument on the matters presented herein.

Respectfully submitted on June 29th, 2023,


*/s/ Marc Gregory Hall*

**MARC GREGORY HALL**
**7474 Greenway Center Drive**
**Suite 150**
**Greenbelt, Maryland**
**(240) 205-3041**
**Counsel for Andre Briscoe**